```
           UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA

                  PARKERSBURG DIVISION
```

**MONTE CRISTIA,**

    **Plaintiff,**

v.                                    Case No. 6:09-cv-01311

**ROBERT NEWELL,**
**CITY OF PARKERSBURG, and**
**GARY MOSS,**

    **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

The undersigned has reviewed the defendants' Motion to Dismiss (Docket # 23) and the plaintiff's Emergency Exparte Motion for Order of Protection (# 26).  For the reasons stated herein, the undersigned recommends that the presiding District Judge grant the former motion, and deny the latter.

### I. BACKGROUND

In January 2006, plaintiff Monte Cristia purchased a home at 1009 Laird Avenue in Parkersburg, West Virginia, that was the subject of multiple municipal building code violations.  Two months later, in March, the plaintiff appeared before the Parkersburg Building Enforcement Agency ("BEA") to propose his plan to fix those violations and conduct other work in the interior of the home.  The plaintiff obtained a permit to do repairs that included electrical work.  In his amended complaint, he states that prior to his obtaining the permits, he found out that the house had been

condemned; the defendants, however, state that the plaintiff's abode had neither been condemned nor was the subject of condemnation proceedings. At the January 6, 2010, hearing in this case, counsel for the defendants emphasized that it had no plans to condemn or demolish the Cristia residence. Defense counsel noted at the hearing that, "no, the City does not have any present intention whatsoever to demolish [the plaintiff's] home," and further asserted that "we have never instituted condemnation proceedings with regard to [the plaintiff's] property." Audio recording of the January 6, 2010, hearing in this case; available upon request.

   Regardless, the plaintiff reappeared before the BEA in March 2008. At this meeting, the City of Parkersburg ("Parkersburg") requested permission to inspect the electrical work that had been undertaken by the plaintiff. Upon hearing this request, the plaintiff apparently noted that he owned "many large dogs in excess of 200 pounds," (#14 at 3), and declined to accept responsibility for the safety of any Parkersburg inspector who would enter his home. Accordingly, Robert Newell ("Newell"), mayor of Parkersburg, stated that a police officer would be required to accompany any inspectors into the Cristia home in order to ensure their safety.

    Several weeks later, Inspector Gary Moss ("Moss") arrived at the Cristia residence for the inspection, along with at least one other inspector and a police officer. The plaintiff refused to let

the officer into his home, and again refused to take responsibility for the safety of the inspectors. According to the plaintiff, Moss also commented that he was "tired of hearing that [Cristia] was disabled and didn't care if he was." Id. at 4. The Parkersburg employees then departed due to the rising tensions; since that incident, there has apparently been no inspection of the Cristia residence.

The plaintiff filed the instant civil action on December 7, 2009. His amended complaint, filed on March 17, 2010, (Docket # 14), alleges violations of the Fourth Amendment, Fifth Amendment, and the Americans With Disabilities Act ("ADA").

On August 6, 2010, the plaintiff filed his "Emergency Exparte Motion for Order of Protection," which alleges that Parkersburg and its police department have been harassing him. (Docket # 26). Apparently, in July 2010, Parkersburg began towing abandoned and illegally maintained vehicles that had been left on the street. On the 24th of the month, an officer of the police department requested the towing of a 1990 Nissan with Arizona registration plates that they believe had expired on August 20, 2009. Once the automobile was towed, the defendants state that the plaintiff threatened the officer with a lawsuit, and inelegantly proposed that the officer "go to hell, eat shit, and die." (#31, ex. A at 2). Law enforcement also noticed that the plaintiff had a motorcycle also illegally parked with what they believed were

3

expired Ohio plates, and ordered it towed as well. During the towing process, the plaintiff, in addition to threatening the law enforcement officer and the tow truck driver with litigation, apparently planted his foot behind or underneath the rear tire of the tow truck, and initially refused to remove it.

The plaintiff later went to Eddie's Auto to recover his vehicles, where the West Virginia State Police were summoned and may have arrested the plaintiff after an altercation began between the plaintiff and the owner of the establishment, presumably named Eddie.  The plaintiff contests the defendants' claim that the vehicles belonged to him and had expired registrations, presenting an affidavit from his ex-wife, Pam Cristia, that states that the vehicles were owned by her and her company.  He also denies using his foot to block the tow truck.  The plaintiff also alleges that he was the person who summoned law enforcement at Eddie's Auto, denies being arrested, and further states that the vehicles were fully operational and maintained.

Several days later, Parkersburg police chief Joseph Martin observed the 1990 Nissan parked on the street.  Again believing that it possessed expired Arizona plates, Martin saw that the vehicle was without wheels and propped up on a freon or propane tank.  Additionally, the phrase "BLOW ME A KISS" had been spray painted across the side of the Nissan.  Each letter spelling out "BLOW ME" was at least one foot tall by one feet wide, and "A KISS"

was minutely spelled out in less than half the area of the Nissan's door handle.  Martin only noticed the "BLOW ME" portion of the plaintiff's declaration, and failed to catch the "A KISS" portion.  However, Martin did deduce via his visual and olfactory senses that the interior of the Nissan had been decorated with liberal quantities of dog feces.[1]

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must assume "the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations."  Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000).  When considering a motion to dismiss, a court "accept[s] as true all well-plead allegations and view[s] the complaint in the light most favorable to the plaintiff."  Sec. of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007); see also Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991).

"[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense."  Ashcroft v. Iqbal, --- U.S. ---,

---

[1]  Given the disputed ownership of the vehicles, it is unclear whether the plaintiff disregarded the old maxim *male ulciscitur dedecus sibi illatum, qui amputat nasum suum* ["he who cuts off his nose takes poor revenge for a shame inflicted on him."].

---, 129 S. Ct. 1937, 1950 (2009). "To survive a Rule 12(b)(6) motion to dismiss, the facts alleged must be enough to raise a right to relief above the speculative level and must provide enough facts to state a claim to relief that is plausible on its face." Robinson v. Am. Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)) (internal quotations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal citations omitted); see also Iqbal, --- U.S. ---, ---, 129 S. Ct. at 1949 (stating that "the Rule does call for sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

*III. DISCUSSION*

*A. The Plaintiff's Amended Complaint*

The plaintiff makes several allegations in his amended complaint, which the undersigned will address in turn. The motion to dismiss filed by defense counsel is not helpful, however, as it relies on the immunity provisions of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1 *et seq*. The Supreme Court of Appeals of West Virginia noted in

Hutchison v. City of Huntington, 479 S.E.2d 649, 662-63 n.17 (1996) (citing Howlett v. Rose, 496 U.S. 356 (1990)), that "state immunity laws are not applicable in § 1983 actions."

*1. Count One*

The plaintiff's claim in this count is unclear, but it appears that he is alleging a due process violation under the Fifth and Fourteenth Amendments. His amended complaint states that

> 57. Given the fact that the defendants have with the exception of one violation notice are proceeding against the plaintiff with there pursuit of illegal search·and / or, of demolishing the plaintiff's home without exercising or recognizing his right of due process.
>
> 58. Code enforcement officer Gary Moss apparently did have his own agenda as proceed against, and harass the plaintiff in this matter.
>
> 59. This will be substantiated at trial by the video that shows Gary Moss making a statement that "I must substantiate to the building commission the progress that was made on the remodel of plaintiff's property to the building commission" when the building commission had stated that all they wish to do what electrical inspection.
>
> 60. Furthennore this will be substantiated by the fact that both a plumbing and electrical inspection had occurred, and that the plaintiff had passed the electrical and plumbing inspections, and that substantiating that the plaintiff had passed his electrical inspection would be required to get the power reinstated at the property.
>
> 61. Gary Moss did state to the building commission that these inspections had never occurred because there was no documentation in the file that would substantiate this.
>
> 62. One must wonder how this documentation of the city's has mysteriously disappeared.
> ***
> 64. The defendants did maliciously, negligently,

>recklessly, intentionally, and with forethought have denied the plaintiff his constitutional Right of due process.

(#14 at 6) [*sic*, *passim*].

"To establish a violation of substantive due process, plaintiffs must 'demonstrate (1) that they had property or a property interest; (2) that the state deprived them of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental authority that no process could cure the deficiency.'" <u>Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach</u>, 420 F.3d 322, 328 (4th Cir. 2005) (quoting <u>Sylvia Dev. Corp. v. Calvert County, Md.</u>, 48 F.3d 810, 827 (4th Cir. 1995)).

If the plaintiff is alleging that his house has been condemned or demolished by Parkersburg, his claim is not credible. In their court filings and at the January 6, 2010, hearing in this case, the defendants have reiterated that the Cristia residence has not been, and is not scheduled to be, condemned or demolished. The plaintiff has not presented sufficient factual matter, accepted as true, to claim that, pursuant to <u>Sunrise Corp.</u>, the defendants deprived him of his property or property interest. <u>See</u> <u>Robinson</u> and <u>Iqbal</u>, supra.

If the plaintiff alleges a violation of due process because he must obey the building code requirements of Parkersburg, "no court thinks, however, that [the due process clause] means the state

can't regulate property—can't for example enact building codes and zoning regulations even though such measures limit the property owner's right to do what he wants with his property." Mann v. Calumet City, Ill., 588 F.3d 949, 952 (7th Cir. 2009) (Posner, J.) (citing, inter alia, Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 394-95 (1926)). See also Luper v. City of Wasilla, 215 P.3d 342, 348-49 (Alaska 2009) (upholding municipal limit of three dogs per residence).

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has failed to state a claim under the Fifth and Fourteenth Amendments for which relief can be granted.

*2. Count Two*

Count Two of the plaintiff's amended complaint alleges that the defendants violated his rights under the Fourth and Fourteenth Amendments. He alleges that the defendants tried to search his home without a warrant or without the presence of exigent circumstances.

> 67. Given the fact that the defendants have required entry into the plaintiff's home by two forms of law enforcement one being code enforcement the second being the city of Parkersburg police officer without legal authority, as there was no search warrant, nor exigent circumstance. (This will be substantiated by audio recordings that were made in this matter)
>
> 68. This requirement being made without lawful authority, probable cause, exigent circumstance, and without a search warrant thus this is a violation of the plaintiffs civil right of unreasonable search.

> 69. The defendants would have you believe that the police officers presence was necessary for the safety of their inspector, Gary Moss and those that accompanied him but it would have been far more productive and reasonable to have an experienced animal control officer such as one of the officers of the Parkersburg Humane Society to handle any issues, or concerns as far as the plaintiff's dogs.
>
> 70. The presence of these additional persons and the police officer did cause extreme anxiety for the plaintiff as he has knowledge of many instances where police officers have shot and killed mastiffs just because there size did cause fear to them.
>
> 71. Plaintiff did try to inform the defendants of his issues with this entire situation but due to the fact of there not allowing him to speak at one of the building commission hearings.
>
> 72. Olaintiff was no way contributory negligent in this matter.
>
> 73. The defendants and with forethought, with intent did recklessly, maliciously, have denied the plaintiff his constitutional right against unreasonable search.
>
> 74. Just because the original inspection that led to the condemning of said property may or may not have been complete as to content does not give or grant the city of Parkersburg and or its agents or employees right to enter any private property without the consent or permission of a homeowner or property owner as the city of Parkersburg is still bound like any other governmental agency to follow and recognize any and all laws and or rights a homeowner or property owner is guaranteed.
>
> 75. The city of Parkersburg cannot require by law access to the interior of an individual's home, to search for, or seek out any violation of law or even zoning or city codes without authorization from the property owner unless it is being done with the exceptions of exigent circumstance or the issuance of a search warrant.

(#14 at 7-8) [*sic*, *passim*].

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. Amend. IV. The exceptions to this rule

"have been jealously and carefully drawn," <u>Jones v. United States</u>, 357 U.S. 493, 499 (1958). Even searches by municipal code inspectors require a warrant if there is no consent and no emergency circumstances. <u>Camara v. Municipal Court of City and County of San Francisco</u>, 387 U.S. 523, 535-40 (1967).

In this instance, the plaintiff's house was not inspected after the plaintiff declined to consent to the defendants' entry. As the defendants properly followed the requirements of <u>Camara</u>, there was no unconstitutional search. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has failed to state a claim under the Fourth and Fourteenth Amendments for which relief can be granted.

*3. Count Three*

Finally, the plaintiff alleges that the defendants violated his rights under the ADA. To quote directly from the relevant portions of the plaintiff's amended complaint, he alleges that:

> 81. Furthermore [the defendants'] violation of his rights under this provision consist of the fact that they required entry into the plaintiff home to do inspections irregardless of the fact that the inspections had already occurred, and the fact that Mr. Moss press the fact that the progress of the remodel of the inside of the plaintiff's property were not being done fast enough.
>
> 82. This will be substantiated by both the video and audio which instantiate the statements of Mr. Moss "since you knew you were disabled you should not have bought the property" and his statements "I don't care that you are disabled and I'm tired of hearing about it."
>
> \*\*\*

11

84. The defendant in this matter repeatedly showed lack of reasonable accommodation for the plaintiff in this matter by both their short notices of hearing, they're requiring inspection of the inside of the plaintiff property even though there had never been a written violation for anything structural or pertaining to the inside of the plaintiff's property.

85. Furthermore the defendants requiring the inspection of the progress of the remodel to the inside of the property even though the plaintiff's progress was not fast enough or sufficient enough to pacify the building commission and or code enforcement.

86. The argument is made is it a violation of law for the disabled plaintiff to either purchase a property that is in need of repair or is it unreasonable for the plaintiff to proceed with the remodel of the inside of the property at his own speed, and or limitations.

87. According to Mr. Moss's statements, it is.

\*\*\*

90. The defendants clearly have shown violation of the plaintiffs rights under the Americans
with disabilities act by there

> 1. defendants have failed to make modifications to existing facilities and practices
> 2. By ignoring the plaintiffs right to procedural due process
> 3. By requiring illegal or improper Search disregarding the ill effects, anxiety and health· issues that it would cause the plaintiff
> 4. Clearly exhibiting "animosity: towards the disabled[,"] Garrett, 531 U.S. at 366 n4; Cleburne, 473 U.S. at 447–450
> 5. Failing to make "reasonable modifications" in public services. 42 U.S.C. 12131(2)
> 6. defendants failure to make, reasonable accommodations to the rigid enforcement of seemingly neutral criteria 42 U.S.C. 12131(2).

(#14, 8-11) [*sic*, *passim*].  In his response to the defendants'

motion to dismiss, the plaintiff further elaborates his ADA claim

12

by arguing that the comments made by Gary Moss about the speed of the plaintiff's renovations violated his rights under the statute.

The ADA is designed to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." ADA §2(b)(1), Pub. L. No. 101-336, 104 Stat. 327, 329 (1990).  In his signing statement, President George H.W. Bush described the ADA as "promis[ing] to open up all aspects of American life to individuals with disabilities" and ending their "unjustified segregation and exclusion . . . from the mainstream of American life."  Statement by President George Bush upon signing S. 933, 26 Weekly Comp. Pres. Doc. 1165, (July 16, 1990), as reprinted in 1990 U.S.C.A.A.N. 601, 601-02 (1990). Similarly, the House Committee on Education and Labor described the purpose of the ADA as:

> . . . provid[ing] a clear and comprehensive national mandate to end discrimination against individuals with disabilities and to bring persons with disabilities into the economic and social mainstream of American life; to provide enforceable standards addressing discrimination against individuals with disabilities, and to ensure that the Federal government plays a central role in enforcing these standards on behalf of individuals with disabilities.

H.R. Rep. No. 101-485, pt. II, at 22-23, as reprinted in 1990 U.S.C.C.A.N. 303, 304.  More recently, the ADA has been described as "the landmark bipartisan legislation that has worked to bring down barriers that, for far too long, kept many of our fellow citizens from fully realizing and experiencing all that this nation

has to offer." <u>Americans with Disabilities Act: Sixteen Years Later: Hearing Before the Subcommittee on the Constitution of the H. Committee on the Judiciary</u>, 109th Cong. 1 (2006) (statement of Congressman Steve Chabot, Subcommittee Chairman).

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." ADA § 202, 42 U.S.C. § 12132. "Public entity" includes "any state or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." ADA § 201, 42 U.S.C. § 12131(1)(A) & (B).

While compliance with municipal code enforcement can fall under Title II of the ADA, <u>see</u> <u>McGary v. City of Portland</u>, 386 F.3d 1259, 1269 (9th Cir. 2009), the plaintiff has failed to state a claim under the ADA even when reviewing his amended complaint in the light most favorable to him. He has only provided labels and conclusions, and has not provided enough facts to state a claim to relief that is plausible on its face. While the undersigned appreciates that Moss's comment may have been upsetting to the plaintiff, such a remark alone does not entitle the plaintiff to relief under the ADA. Further, the plaintiff's theories about the inspection process neither allege ADA violations with sufficient

particularity nor constitute anything more than the plaintiff's conclusion that the ADA has been violated. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has failed to state a claim for which relief can be granted as to this count.

*B. The Plaintiff's "Emergency Exparte Motion for Order of Protection"*

In his Motion, the plaintiff requests that the Court "ban the City of Parkersburg and or there agents or employees from towing seizing or restricting the use of any property owned by the plaintiff and or his family unless there is a criminal action that has been initiated by the county, state, or federal prosecutors that would direct such an action." (#26 at 2) [*sic*]. In response, the defendants attempt to educate the Court as to their version of the events, deny any untoward motives on their parts, and request that the Court deny the plaintiff's motion. In response, the plaintiff makes several arguments regarding the registration and ownership of the vehicles, as noted earlier; he points out that, contrary to the defendants' assertions, he had painted "BLOW ME A KISS" on the Nissan, and not merely "BLOW ME"; and again he alleges harassment, positing that the instant vehicles were the first ones towed under the defendants' program, and pondering how many other vehicles were ultimately towed.

There is no requirement that a municipality initiate a

criminal case before towing a vehicle which is in violation of any applicable law. It is inappropriate for federal courts to interfere in state and local law enforcement actions, absent extraordinary circumstances. Younger v. Harris, 401 U.S. 37, 43-45 (1971). The undersigned recommends that the presiding District Judge deny the plaintiff's motion. If Parkersburg towed vehicles that were, in fact, properly registered and operational, such towing may be addressed by the vehicles' owner, and not the plaintiff, who has disavowed ownership.

*IV. RECOMMENDATION*

For the reasons stated above, it is respectfully **RECOMMENDED** that the defendants' Motion to Dismiss (#23) be granted and the plaintiff's Emergency Exparte Motion for Order of Protection (# 26) be denied.

The parties are notified that this "Proposed Findings and Recommendation" is hereby FILED, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which

objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Chief Judge Goodwin.

The Clerk is directed to mail a copy of this Order to the plaintiff and to transmit it to counsel of record.

ENTER: February 9, 2011

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge